UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SWIATEK, KRISTINE SWIATEK,
and CHRISTIAN SWIATEK,

      Plaintiffs,

v.

UTICA COMMUNITY SCHOOLS,

      Defendant.

Case No.
Hon.
Magistrate

---

## COMPLAINT
## (APPEAL UNDER THE INDIVIDUALS
## WITH DISABILITIES EDUCATION ACT)

Plaintiffs, John Swiatek and Kristine Swiatek (collectively, "Parents"), and Christian Swiatek ("Student"), through their attorneys, Demorest Law Firm, PLLC, state as follows for their Complaint and appeal from a State Administrative Law Judge's Decision and Order:

### BACKGROUND

1.    The Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et seq.*, is a law that makes available a free appropriate public education ("FAPE") to eligible children with disabilities throughout the nation, and ensures special education and related services to those children.

2.     The IDEA also gives the parents of such children the right to an impartial due process hearing by the State's education agency, 20 U.S.C. §1415(f), and the right to appeal to the district courts of the United States from any adverse findings and decision made as a result of such a hearing.  20 U.S.C. §1415(i)(2).

3.     Defendant Utica Community Schools ("UCS") failed to provide Student with FAPE.  UCS also failed to reimburse his Parents for expenses that they incurred for his education due to UCS' failure to provide FAPE.

4.     With over 25,000 students, UCS is Michigan's second largest school district.  UCS is second only to Detroit Public Schools, with 46,000+ students. UCS is larger than Dearborn City School District, Michigan's third largest district, which has an estimated 20,000 students in any given school year.

5.     Plaintiffs filed this appeal because they did not receive reimbursement from UCS and did not receive the mandatory due process hearing.

## PARTIES

6.     Plaintiffs, John and Kristine Swiatek, are residents of Shelby Township, MI and are the parents of Plaintiff Christian Swiatek.

7.     Plaintiff Christian Swiatek ("Student") is now a 20-year-old student who previously attended Utica High School, and:

     (a)     Was eligible for special education program services under the eligibility categories of deafness and a "specific learning disorder" (specifically, dyslexia);

2

(b)     Whose Parents have been his advocate since his entry into the public school system.  In this regard, Congress has repeatedly emphasized throughout IDEA the importance and indeed the necessity of parental participation (20 U.S.C. §§1400(c), 1401, 1412(7) and 1415, *et seq.*, but particularly 1415(b)(1) and 1415(b)(2)); and

(c)     Whose Parents are entitled to prosecute IDEA claims on their own behalf, and on behalf of their son (20 U.S.C. §1415(i)(2)(A)).

8.      Student also joins in this Complaint as a Plaintiff as he is now an adult.

9.      Defendant UCS is a municipal corporation located in Macomb County, Michigan and as a recipient of federal funding is responsible for providing and administering a FAPE suited to the particular needs of Christian Swiatek, a student with multiple disabilities.

## FACTS

10.     In 2010, at the age of 6, Christian Swiatek was diagnosed with moderate to severe dyslexia and UCS was provided a full copy of the report, including all of the raw data, test results and recommendations for services and accommodations. Dyslexia is a lifelong condition that can be remediated, but not cured.  Despite the early documented diagnosis, for the remainder of his years in the Utica school system, UCS failed to address or even acknowledge Christian's dyslexia.

11.     Christian also developed mild hearing loss years later while still in elementary school.  (Studies have shown that hearing loss is associated with severe dyslexia).  As the years progressed, Christian's hearing loss transitioned from mild

3

to moderate, then from moderate to severe. Christian continues to progressively lose more hearing and at 20 years old is now nearly deaf. Reading has become the primary form of communication for Christian.

12.     Christian was entitled to, and UCS was obligated to provide him with, a FAPE. This can include outside tutoring, etc. if the school is not equipped to provide the appropriate education.

13.     To mitigate life changing consequences and damages due to Christian's disabilities and UCS' failure to acknowledge his situation and provide FAPE, the Parents enrolled Christian in private tutoring at Brainspring Learning Center from 2010 to 2017.

14.     Due to the severity of Christian's dyslexia, 384 Orton-Gillingham tutoring sessions were paid for by the Parents out of their own pockets during these years.

15.     The Parents also worked directly with Christian's teachers at UCS each semester, informally, to further mitigate damages as a result of Christian's dyslexia.

16.     These efforts by the Parents contributed to Christian's educational performance, notwithstanding UCS' violations of the IDEA.

17.     In 2019 and again in 2020, Christian was denied dyslexia accommodations for taking the SAT test by the College Board due to UCS' administrative failures to properly document his dyslexia and the need for

accommodations. Christian should have been given extra time to take this important college entrance test, but was not due to UCS' lack of performance with regards to documenting his dyslexia and dyslexia-specific accommodations per the College Board requirements.

18.     Over the years, the Parents attempted to get an Individual Education Program (IEP) or 504 plan implemented specifically for Christian's dyslexia.  UCS would only provide these based on his deafness, and would not acknowledge or provide any plan for dealing with his dyslexia.  Furthermore, UCS administration incorrectly stated that a student could not have an IEP for more than one disability.

19.     Starting in the fifth grade, Student received accommodations for his hearing loss through an IEP. Student was provided extra time and special written instructions for all assignments and exams based upon his hearing loss. During Parents' and Student's attempts to secure an IEP or 504 plan for his dyslexia during Student's final years of high school, UCS argued that any academic struggles Student was facing were related solely to his hearing loss and his current IEP addressed those issues. UCS denied the existence of Student's dyslexia and the fact that he needed, and was entitled to, additional accommodations based on his dyslexia. UCS' position was that Student did not need additional accommodations and his problems were solved by the IEP (for his hearing loss) that was in place. Had that been the case, the Due Process Complaint would not have been necessary.

20.   To address the College Board's rejection letters for accommodations on the SAT, Christian was also entitled to an IEE to test him for dyslexia at the public's expense, using the required DSM-5 tests.

21.   USC finally approved an Independent Educational Evaluation ("IEE") in February 2020 (**EX 1**).  UCS approved the necessary IEE but has improperly denied reimbursement to the Swiateks for reasons that are ever changing.

22.   In fact, UCS stated in writing that they still refused to even acknowledge a "suspicion of dyslexia" (**EX 2**) in spite of (a) Christian's 2010 diagnosis, (b) his being placed in a Title 1 program called "Super Stallions" at West Utica Elementary, (c) his pediatrician's 2019 letter, and (d) the results of the IEE performed in 2020 by Robert D. Smith, Ph.D., a neuropsychologist and nationally-recognized dyslexia expert.

23.   Step One of the College Board Requirements for dyslexia accommodations requires a DSM-5 Test.  On February 1, 2021, the State ordered UCS to provide a Prior Written Notice (PWN) to the Parents.  UCS provided the PWN on February 17, 2021 (**EX 3**).  The PWN states "UCS does not use DSM-5 because it is not educationally based," yet the College Board requires DSM-5 tests for accommodations.  The PWN not only misrepresents DSM-5 testing, but raises further concerns regarding UCS' policies on dyslexia for 26,000 students.  Of the 13

disabilities in the IDEA, "Specific Learning Disability" is the most prevalent, and dyslexia accounts for 80% of all SLDs.

24.    In March 2021, after the SATs were taken by other high school juniors and after the February 1, 2021 Michigan Department of Education report confirmed that Christian has dyslexia, the Utica High School principal overruled the directives of UCS' Special Education Director and finally acknowledged Christian's dyslexia. Facing a Civil Rights complaint against the high school, the principal used Dr. Smith's IEE (DSM-5 test results and 20-page report) as justification to implement a 504 plan (just weeks before Christian graduated from high school) (**EX 4**).  In fact, none of the three diagnostic evaluations cited in the March 18, 2021 504 plan were paid for, or reimbursed, by UCS.

25.    Then, on April 7, 2021 UCS declined, in writing, to pay for Dr. Smith's IEE, which was used to implement Christian's 504 plan for dyslexia (**EX 5**).

26.    This belated action was too late to help with his high school education, but should have helped to ensure that Christian could appropriately receive accommodations in college.  However, UCS negated the effect of the 504 plan because Christian's Transition Plan did not even mention his dyslexia – yet another new violation (**EX 6**).

27.    In an attempt to resolve the reimbursement matters under the IDEA and/or under 504 plan laws, the Parents attempted to mediate with UCS.  In part, the

Parents relied upon the recent May 2021 504 plan as a further justification for reimbursement for the College Board-required DSM-5 testing.

28.    On July 2, 2021, the Parents received a misleading and deceptive letter from a law firm representing UCS, misrepresenting that the matter was completed, and further failing to inform the Parents of their rights to file for a due process hearing (**EX 7**). The letter noted that "your disputes have already been resolved by the Michigan Department of Education and/or the District. These disputes are also moot given the fact your son has already graduated from the District."

29.    Due in part to the July 2, 2021 attorney letter and UCS' repeated violations of Christian's civil rights, Plaintiff John Swiatek filed for a Civil Rights investigation with the Michigan Department of Civil Rights (MDCR) on October 13, 2021 and a case was opened on December 8, 2021 (MDCR Case No. 620448). The Parents were awaiting the results of the investigation for a long time due, in part, to COVID. In fact, the Parents did not receive information on the status of the MDCR investigation until March of 2023. The MDCR then requested more information from the Parents, which has been provided to the MDCR. That case is still pending at the MDCR.

30.    Having not found relief for the IEE reimbursement with the MDCR under 504 plan law and due to UCS' repeated violations of IDEA, on April 6, 2023 Plaintiff John Swiatek also filed a Model Due Process Complaint/Request for

Hearing form with the Michigan Department of Education Office of Special Education, certified as Docket No. DP-23-0040, MOAHR Docket No. 23-016099 (**EX 8**).

31.    In the Model Due Process Complaint/Request for Hearing, the Swiateks sought (a) reimbursement for the cost of outside tutoring due to UCS' failure to provide FAPE, (b) reimbursement for the cost of the IEE performed by Dr. Smith, and (c) attorneys' fees (**EX 8**).

32.    Christian Swiatek joined in the Due Process Complaint/Request for Hearing as a claimant (**EX 9**).

33.    No due process hearing was ever conducted. Instead, the ALJ granted a motion for summary disposition filed by UCS, improperly ruling that Plaintiffs' claims are barred by a statute of limitations.

34.    On June 29, 2023, the Administrative Law Judge ("ALJ") issued a 10-page Decision and Order Granting Respondent's Motion for Summary Disposition (**EX 10**). The ALJ's Decision and Order states, in part:

> . . . Respondent's Motion for Summary Disposition for Absence of a Genuine Issue of Material Fact and Failure to State a Claim within the two-year statute of limitations is <u>GRANTED</u>.

35.    Plaintiffs filed a Motion for Reconsideration with the ALJ.

36.    On April 8, 2023, the ALJ issued a Decision and Order Denying Parents's Motion for Reconsideration (**EX 11**).

37.     Plaintiffs timely filed this appeal due to the legal errors made by the ALJ in his decisions (a) granting summary disposition to UCS and (b) denying Plaintiffs' Motion for Reconsideration.

## JURISDICTION AND VENUE

38.     Jurisdiction of this Court is asserted under the Individuals With Disabilities Education Act, 20 U.S.C. §1415(i) and 28 U.S.C. §1331 (Federal Question Jurisdiction).  Plaintiffs are "aggrieved parties" within the meaning of 20 U.S.C. §1415(i).  *See, also,* 34 C.F.R. §300.516 (2010).

39.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the events giving rise to this claim occurred in this district and all parties are residents of Macomb County, Michigan.

## COUNT I
## ERRONEOUS RULING ON STATUTE OF LIMITATIONS

40.     Plaintiffs incorporate by reference, as if fully set forth herein, the allegations contained in Paragraphs 1-38, above.

41.     The ALJ ruled improperly that Plaintiffs' claims are barred by a two-year statute of limitations.  Plaintiffs hereby appeal that ruling, and request that this Court reverse and remand the case for a due process hearing.

42.     IDEA §1415(b)(6)(B), (f)(3)(C) states that a hearing shall be requested within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint.

43.     There are two exceptions to the two-year statute of limitations under 34 CFR 300.511(f): (a) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (b) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent. As discussed below, both of these exceptions apply in this case.

### Timely Request For IEE Reimbursement

44.     The request in the Due Process Complaint for reimbursement of the cost of the IEE was timely.

45.     UCS' sole argument is that the IEE was conducted in 2020 and therefore the request for reimbursement of the cost is beyond the two-year statute of limitations. UCS failed to address the surrounding circumstances and procedures, specifically those that UCS failed to follow.

46.     In January 2020, due to their dissatisfaction with UCS' evaluation process for dyslexia, Parents requested an IEE for Student specifically regarding dyslexia.

47.     On February 6, 2020 UCS approved the IEE and the cost of the evaluation to be performed by Dr. Robert D. Smith of the Michigan Dyslexia Institute, Inc. (**EX 1**).

48.    The IEE was performed on March 5, 2020, but the Parents were never reimbursed for the cost of it by UCS.

49.    IDEA §300.502 states that if a parent requests an IEE, UCS must either (1) file its own due process complaint to request a hearing to show that its evaluation is appropriate (UCS did not do this), or (2) **ensure that the IEE is provided at public expense unless UCS demonstrates in a hearing pursuant to §§300.507 through 300.513 that the evaluation obtained by the parent did not meet [its] criteria.**

50.    UCS did not do either of these things, so the two-year statute of limitations never began to run.

51.    Once the IEE was approved and performed, UCS was required to reimburse Parents immediately unless UCS demonstrated otherwise in a hearing. UCS did not do so. Parents were then forced to incur additional expenses, filing various complaints and other charges against UCS, seeking reimbursement. These other complaints and charges were unsuccessful for a variety of incorrect reasons asserted by UCS.

52.    The relevant date for the statute of limitations is not the performance of the IEE, but the failure of UCS to either reimburse Parents for the IEE or file for a hearing as "ensured" by §300.502.

53.     The Notice of Denial of Reimbursement occurred on April 7, 2021 (**EX 5**). The Due Process Complaint was filed less than two years later, on April 6, 2023.

54.     Prior to securing counsel  to represent themselves, on July 2, 2021 the Parents received a letter directly from Robert Lusk, attorney for UCS, indicating that UCS was denying mediation (**EX 7**).  This letter misrepresented the true status of the matter and again lacked any notice of available Due Process Hearing relief afforded to the Parents by IDEA laws.  The Due Process Complaint was filed less than two years later, on April 6, 2023.

### **Timely Request For Tutoring Reimbursement**

55.     UCS states that "Petitioner unilaterally enrolled the Student in private tutoring sessions as early as 2010, for reasons that are unclear and have never been communicated to the School District." This is false. Prior to Student's dyslexia diagnosis, Parents were notified by Student's teachers at West Utica Elementary (one of UCS' schools) that Student had failed his "nonsense syllables" lesson and other related testing. Student's Parents met with members of West Utica Elementary staff, including Mrs. Hathcock, Mrs. Brunetz, Mrs. DeCarolis, and Mrs. Fonacier, to discuss Student's options. Student was then enrolled in Super Stallions, a program to help poor readers.

56.     Student was first diagnosed with dyslexia on May 4, 2010 by Kimberly Kowalski, a Certified Dyslexia Testing Specialist. On May 20, 2010 Parents

presented the results of the dyslexia tests, including the diagnosis, to West Utica Elementary. Neither West Utica Elementary nor UCS did anything at that time to acknowledge or accommodate Student's dyslexia.

57.     Because Parents did not want Student to fall behind academically due to his dyslexia, Parents enrolled Student in outside tutoring that is specifically designed for students with dyslexia. Student was enrolled in this tutoring for seven years. Parents paid for this tutoring themselves. Parents were not reimbursed by UCS for any of the tutoring, nor were the parents informed of their rights under FAPE.

58.     The Due Process Complaint for tutoring reimbursement was timely filed based on the misrepresentation and withholding exceptions, as discussed below.

**Misrepresentation Exception To Statute Of Limitations**

59.     Even if the Due Process Complaint was not filed within two years of the relevant starting date, the Statute of Limitations does not apply due to multiple material misrepresentations made by UCS to Plaintiffs.

60.     On January 30, 2020 UCS gave Parents a document titled "Review of Existing Evaluation Data" (REED). In the REED document, UCS stated that "Student was initially provided support as a student with a 504 plan in 2016 due to a diagnosis with Dyslexia". That is a misrepresentation. Student did not receive a

14

504 plan to accommodate his dyslexia until February 2021, at the insistence of Parents (**EX 4**).

61.    Further, on or about June 10, 2020, Tumara Johnston, Supervisor of Special Services for UCS, told Parents that Student could not have an IEP for both hearing loss and dyslexia and Parents would have to choose which disability to deal with and which to ignore. This is also a misrepresentation. As previously mentioned, the IDEA specifically provides a category of "Multiple Disabilities" for children like Student who suffer from multiple disabilities. UCS never brought this up as an option to Parents.

62.    The ALJ's Decision states that the UCS indicated that the tutoring was unnecessary. However, those statements by UCS were themselves misrepresentations and withholding of information. UCS' responses to FOIA requests show that UCS had no trained staff to deal with dyslexia issues. For example, the UCS Supervisor of Special Services, Tumara Johnston, did not even know that dyslexia was one of the designated Specific Learning Disabilities (SLD) (**EX 12**). The UCS admits that it had no established program or procedure to screen for or identify dyslexia among its student body.

63.    Significantly, UCS intentionally deterred Plaintiffs from pursuing their rights. For example, the letter from UCS' attorney, Robert Lusk, dated July 2, 2021, did not even mention a possible due process hearing and tried to intimidate the

Swiateks not to take further action (**EX 7**). The letter misrepresented that Plaintiffs had no right to request a due process hearing. This letter was sent to the Parents when they did not have the benefit of advice from counsel.

### Withholding Information Exception To Statute Of Limitations

64. Even if the Due Process Complaint was not filed within two years of the relevant starting date, the Statute of Limitations does not apply due to multiple instances of withholding information by UCS.

65. Throughout this entire process, Parents made several requests for UCS to provide Student's educational records, including his elementary school records. Parents wanted to show that dyslexia had been brought up in the past and that UCS should have had a reason to suspect Student was dyslexic but did nothing to accommodate him. Each time, UCS failed to produce the records, claiming that the elementary school records were lost, not available, and not needed. Parents and Student have a right to those educational records and if UCS is unable to produce any records, it can only be assumed that they were intentionally lost or destroyed, because UCS has a legal duty to maintain those records.

66. UCS also failed to provide Christian or his Parents with a notice of procedural safeguards during those years to tell them their rights as parents, or that they had the right to request a due process hearing. This failure to advise them of their rights caused them to delay requesting a due process hearing. The first time

16

that the Swiateks ever received such a notice was after the Michigan Department of Education admonished UCS and its head of special education for not doing so earlier.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

(a)   That the Decision and Order of the ALJ be reversed and the case be remanded for the ALJ to conduct a due process hearing;

(c)   That this Court award reasonable attorneys' fees and costs as it deems appropriate and commensurate; and

(e)   That such other relief be awarded as this Court deems proper.

Respectfully submitted,

DEMOREST LAW FIRM, PLLC

By: _/s/  Mark S. Demorest_____
Mark S. Demorest (P35912)
Attorneys for Plaintiffs
322 W. Lincoln Ave.
Royal Oak, MI 48067
(248) 723-5500
mark@demolaw.com

Dated:  November 6, 2023

Swiatek/Utica Community Schools (1550)/Pleadings/2023 11 05 Complaint and Appeal (final).docx

# EXHIBIT 1

**Addendum – Criteria for an Independent Educational Evaluation**
**Swiatek**
**February 6, 2020**

### Independent Education Evaluation

This is an addendum to your request and Utica Community Schools agreement for an independent education evaluation (IEE).  Utica Community Schools agreed to the IEE on February 6, 2020.  Utica Community Schools is offering up to $700.00 (seven hundred-dollars) to complete the evaluation.

If you do not believe this amount is sufficient, please contact Tumara Johnston, Supervisor, regarding your concern.


Tumara Johnston, Supervisor
Utica Community Schools
11303 Greendale
Sterling Heights, MI 48312

# EXHIBIT 2

 **Gmail**

John Swiatek <johnaswiatek@gmail.com>

## RE: REED meeting
1 message

**JOHNSTON, TUMARA** <TUMARA.JOHNSTON@uticak12.org>                          Tue, Jan 28, 2020 at 1:20 PM
To: John Swiatek <johnaswiatek@gmail.com>, "AGGARWAL, RITU" <ritu.aggarwal@uticak12.org>
Cc: "KEMMER, AMY" <AMY.KEMMER@uticak12.org>, Kristine <kristineswiatek@gmail.com>, "frankovich4@yahoo.com"
<frankovich4@yahoo.com>, "MIKULA, JEANETTE" <JEANETTE.MIKULA@uticak12.org>

Good afternoon,

Please remember this is a parent request for an evaluation therefore the team does not have any suspicion of a learning disability
based on dyslexia at this time.

Tumara


Tumara Johnston

Supervisor of Special Services

tumara.johnston@uticak12.org

Phone: 586.797.1020

Fax: 586.797.8371



**From:** John Swiatek <johnaswiatek@gmail.com>
**Sent:** Tuesday, January 28, 2020 12:51 PM
**To:** AGGARWAL, RITU <ritu.aggarwal@uticak12.org>
**Cc:** KEMMER, AMY <AMY.KEMMER@UticaK12.org>; JOHNSTON, TUMARA <TUMARA.JOHNSTON@uticak12.org>; Kristine
<kristineswiatek@gmail.com>; frankovich4@yahoo.com; MIKULA, JEANETTE <JEANETTE.MIKULA@UticaK12.org>
**Subject:** Re: REED meeting


CAUTION: This email originated from outside of Utica Community Schools. Do not click any links or open attachments
unless you recognize the sender and know the content is safe.


Hi Ritu,


Did you get a chance to put Thursday's agenda together?


Also, since forming a 'suspicion' for the SLD is part of the MTSS process, please include what the rest of Christian's IEP team
'suspects' is the SLD prior to the meeting.  As my Jan 24, 2020 email to Tumara indicated, the suspicion should be based on the parent
data presented, past school evaluations and all other available data.  I had asked for the tams suspicion last Friday but did not hear
anything back yet.


Thanks,

John

# EXHIBIT 3

 **Utica Community Schools**

## PRIOR WRITTEN NOTICE

The Individuals with Disabilities Education Act (IDEA) mandates that the district provide written notice to the parent when the district proposes or refuses to initiate or change the identification, evaluation, or educational placement of the student or the provision of a free appropriate public education (FAPE) to the student.

You are receiving this notice for: **Christian Swiatek**

You are receiving this notice because of the following action(s) below:
On May 29, 2020 a MET/Reevaluation team meeting was held and completed. The team made a recommendation for an eligibility for special education on the same date. The MET/Reevaluation recommendation accepted by the IEP team, is for a primary eligibility for Deaf and/or Hard of Hearing with qualifying criteria for Hard of Hearing. The MET/Reevaluation team did not recommend Specific Learning Disability, and as a result the IEP team determined the student eligible with a primary eligibility for Deaf and/or Hard of Hearing with qualifying criteria for Hard of Hearing.

Please provide an explanation of why the LEA proposes or refuses to take the action(s) above:
Utica Community Schools conducted a sufficiently comprehensive reevaluation of the student to identify all the student's special education related service needs. Utica Community Schools does not determine the student eligible as a student with a Specific Learning Disability. An IEP was developed, which considered Parent input and outside evaluations, to address the Student's unique educational and behavioral needs which determined the student eligible for Deaf and/or Hard of Hearing with qualifying criteria for Hard of Hearing.

Please provide a description of each evaluation procedure, assessment, record, or report the LEA used as a basis for the proposed or refused action(s):
At the May 29, 2020 MET/Reevaluation relevant background information/case history was reviewed which included a Section 504 plan from 2016, and an initial special education evaluation from 2017 identifying Deaf and/or Hard of Hearing based on audiograms, Woodcock Johnson Test of Achievement and Clinical Evaluation of Language Fundamentals that were completed. General and special education Teacher input was provided and considered, as well. A doctor's note from 2019 indicated a diagnosis for dyslexia and the need for extended time on assessments.

The parents did not allow Utica Community Schools to complete proposed standardized assessments.

Included and considered were, educationally relevant medical information from a 2019 audiogram that indicated the student had moderate to moderately severe hearing loss. The student wears bilateral hearing aids which the parents report he struggles to wear daily.

Included and considered were, state and district assessments from 2018 to 2019 for SAT, PSAT and MSTEP and were reviewed. Curriculum based data, which included recent grades and teacher observations were also reviewed.

The parents provided an assessment conducted by an evaluator in private practice from March 5, 2020. The evaluator utilized the Kaufman Test of Educational Achievement and a review of student educational records. The

areas assessed were reported in Reading, Math and Writing. The evaluator interpreted areas as low average, that members of the MET/Reevaluation team interpreted as average by the school district. The evaluator in private practice referred to criteria in Diagnostic and Statistical Manual of Mental Disorders - 5th edition for recommending eligibility. Members of MET/Reevaluation Teacher observations and input indicated no concerns related to reading, math and writing. Additional consideration for eligibility did demonstrate the student was not achieving state-approved grade-level standards. The student meets grade-level standards according to curriculum based assessments, PSAT/SAT scores and grades.

Cognitive assessment results demonstrate the student in the average range with no cognitive weaknesses which would impact performance and progress in the general education curriculum was provided by the evaluator in private practice from March 5, 2020.

A letter from the student's primary care physician on December 4, 2019, suggested a need for extended time on state and district assessments.

An audiological audiogram from September 24, 2019 reports the hearing loss impacts the student's ability to access information auditorily and the student may become fatigued. This may affect communication between peers and adults as well as classroom comprehension.

A diagnosis provided by the outside evaluator in private practice from March 5, 2020, referred to Diagnostic and Statistical Manual for Mental Disorders - 5th edition for the student. Utica Community Schools utilizes criteria that does not use DSM 5 for criteria because it is not educationally based.

Observations from a general education teacher and teacher consultant were provided. Their observations indicated the student did not require accommodations for reading and written expression.

Speech and language shared that the student did not wear, need hearing aids, or amplification system per the parent. The parent did not allow the speech and language to assess the student.

In consideration of eligibility as a child with a specific learning disability, the following were considered:
1. The team included the student's parents and a team of qualified professionals which included the student's regular education teacher and at least one person qualified to conduct individual diagnostic examinations of children.
2. Underachievement was not due to lack of appropriate instruction in reading or math.
3. The student was provided appropriate instruction in regular education settings, delivered by qualified personnel.
4. Data based documentation of repeated assessments of achievement at reasonable intervals, reflecting formal assessment of student progress during instruction, was provided to the parents.
5. At least one member of the group observed the student in the learning environment after the student was referred for an evaluation and parental consent was obtained.
6. The student did not exhibit a pattern of strengths and weaknesses (PSW) in performance, achievement, or both, related to age. State approved grade level standards or intellectual development determined by the group to be relevant to the identification of specific learning disability, using appropriate assessments.
7. The student did not meet the eligibility requirements for the category of specific learning disability.

| Options Considered but Not Selected | Reason Not Selected |
|---|---|
| Does the student meet eligibility criteria for special education as a student with a specific learning disability. | The student does not meet eligibility criteria for special education as a student with a specific learning disability for the following reasons: Underachievement was not due to lack of appropriate instruction in reading or math, the student was provided appropriate instruction in regular education settings delivered by qualified |

| | personnel, Data based documentation of assessments reflect student progress during instruction, Student did not exhibit a PSW in performance or achievement, And state approved grade level standards or intellectual development with appropriate assessments did not demonstrate eligibility requirements for the category of specific learning disability.<br><br>Based on the district conducting a comprehensive reevaluation to identify all the student's special education and related service needs, primary eligibility for Deaf/Hard of Hearing with qualifying criteria Hard of Hearing was determined. |
|---|---|

☐ No other options were considered.

---

☐ Other factors that are relevant to the district's proposal or refusal (describe):
There are no other factors that are relevant to Utica Community Schools proposal.
☑ There are no other factors that are relevant to the district's proposal or refusal.

---

The *Procedural Safeguards Notice* that you received describes protections under the Individuals with Disabilities Education Act (IDEA). Information is also available from:

- MICHIGAN ALLIANCE FOR FAMILIES, 1819 South Wagner Road, PO Box 1406, Ann Arbor, MI 49106; 1-800-552-4821; www.michiganallianceforfamilies.org

- MICHIGAN DEPARTMENT OF EDUCATION, OFFICE OF SPECIAL EDUCATION AND EARLY INTERVENTION SERVICES, PO Box 30008, Lansing, MI 48909; 1-517-373-0923; www.michigan.gov/mde

- MICHIGAN PROTECTION AND ADVOCACY, 4095 Legacy Parkway, Suite 500, Lansing, MI 48911-4263; 1-800-288-5923; www.mpas.org

---

District Superintendent/Designee: _Leon Wagmaster_   Date: _2/17/2021_

# EXHIBIT 4

**Utica Community Schools**
**11303 Greendale Dr**
**Sterling Heights, Michigan 48312-2925**
**Phone: (586) 797-1000**

| Section 504 - Plan |
|---|

**Student Name:** Christian Swiatek        **Birth Date:** 07/03/2003        **UIC#:** 1837470504
**Home Address:** 46208 Meadowview Dr - Shelby Twp, Michigan 48317
**Attending School:** Utica Virtual HS        **Grade:** Twelfth grade

**Parent/Guardian:** John Swiatek - Father
   **Home Telephone:** 586-731-0288      **Work Telephone:** 586-256-2377      **Cell Telephone:** 248-302-2400
**Parent/Guardian:** Kristine Swiatek - Mother
   **Address (if different):** 46208 Meadowview Drive - Shelby Twp, Michigan 48317
   **Home Telephone:** 5867310288        **Cell Telephone:** 586-731-0288

**Meeting Date:** 03/05/2021
**Purpose of Meeting:** ☑ Initial   ☐ Review   ☐ Redetermination

**Parent - Method of Contact:** Phone Call   **By:** Jeremy Kranzo   **Date:** 02/26/2021

**Meeting Participants**
Team members should include persons knowledgeable about the student, the meaning of evaluation data, and placement options.

Jeremy Kranzo , School Principal/Assistant Principal

Annemarie Carabelli , Counselor

Courtney Struck , Counselor

Peter Paulon , School Principal/Assistant Principal

Mr. and Mrs. Swiatek

**Summary of Evaluation Information:**
   **Review existing data including local and/or state assessments.**
   SAT 12/07/2019-
   Total- 970,
   Math- 490,
   Reading- 24
   EBRW- 480

   **Review existing data of professional staff observations.**
   Christian's teachers report that they have been working with him throughout this current semester to get missing work turned in. Mr. Spry reported that Christian was missing 4 assignments (since his initial report Christian has turned in some of these assignments). Mr. Orlowski reported that Christian has been missing assignments in the past, but he has worked with him to get them completed and turned in and how his grade has been brought up. Mr. Jenkins reported that Christian has used his accommodation for extra time on assignments this year and has provided him copies of his notes. Ms. Snyder reported that Christian currently has a C+ in her class, but is missing a 45 point assignment and she anticipates once that is turned in he will be in the A-range.

   His grades as of 3/4/21 are as follows: English 12 A-, CSI-Eng Tech LF, AP Calc C+, Auto I A-, Marketing I C+ (at

time of the meeting)

His current grades as of 3/17/21 are as follows: English 12 A-, CSI-Eng Tech A, AP Calc B, Auto 1 A, Marketing I A

**Review existing data of curriculum-based measures and classroom observations.**
Christian's teachers are currently using a variety of practices to deliver their curriculum (group work, projects, lecture, online modules, etc.). His teachers report that they are implementing accommodations that he has from his IEP for his hearing loss. A common accommodation that is being used is extended time on missing work. His teachers have reported that they are working with Christian so he can get the missing work completed and turned in.

**Review existing data provided by parent/guardian (e.g., evaluations, medical, psychological, etc.)**
Mr. Swiatek provided a Neuropsychological Evaluation that was completed in March 2020 by Dr. Robert Smith, a Dyslexia evaluation completed in May 2010 by Kimberly Kowalski, and a letter provided by Christian's primary care physician Dr. Sharon Geimer.

**Review existing information provided by student.**
none at this time

**Is there a Health Care Plan for this Student?** ☐ Yes ☑ No

*[handwritten note:] UCS RELIES ON DR. SMITH IEE BUT DOES NOT PAY FOR THE DIAGNOSIS.*

**Based on the evaluation information reviewed:**
Does the student have a physical or mental impairment? ☑ Yes ☐ No
Please explain: Tested by the Michigan Dyslexia Institute, Inc. and diagnosed as a dyslexic reader who struggles with efficient decoding and processing of the printed word (dysgraphia). His level of reading impairment is moderate to severe. He also has an IEP for hearing loss.
Does the impairment substantially limit one or more major life activities? ☑ Yes ☐ No
Please explain: Christian's dyslexia does limit his ability when it comes to reading and causes struggles with life activities related to time management. He also has limited hearing ability that is covered by an existing IEP.

**Eligibility Determination:**
☑ Student is eligible under Section 504
☐ Student is not eligible under Section 504
☐ The student has a qualifying disability under Section 504, but does not require a Section 504 Plan at this time.

| Section 504 - Accommodation(s) |
|---|

**Student Name:** Christian Swiatek     **Birth Date:** 07/03/2003     **UIC#:** 1837470504

List the aids, supports, and services needed for this student to have equal access and opportunity to participate in school programs and activities. Note: Each service or accommodation should be directly related to the substantial limitation caused by the student's impairment.

| Area of Need | Service/Accommodations | Person Responsible |
|---|---|---|
| Assignments | -Student will have use of computer to complete assignments and homework instead of handwritten.<br>-Written assignments will be graded on | Student and teacher |

| | content instead of grammar and/or spelling mistakes.<br>- Student will be able to get a copy of teacher's notes, when student requests the notes and when available.<br>- Student will be able to use a calculator for assignments.<br>- Student will be able to use resources to read books/passages out loud. ( with help of Instructional Technology)Books on tape can be used.<br>- Missing assignments that are not turned in past the assessment, will be exempted from the gradebook.<br>- Reading aloud is not a requirement. | |
|---|---|---|
| Testing | - Student will get double time for assessments.<br>- Student will be able to test in small groups when requested.<br>- Tests can be read aloud for the student.<br>-May take a test orally instead of written. | Student and teacher |

Section 504 - Plan for Christian Swiatek (1837470504)

| Student Name: Christian Swiatek | Birth Date: 07/03/2003 | UIC#: 1837470504 |
|---|---|---|

**Notice of Intent to Implement Section 504 Plan**

Plan implementation date: 03/05/2021
Person responsible for implementation/review: Mr. Kranzo/Mrs. Carabelli

_____          ___3/19/21___
Signature of Section 504 Coordinator or Designee          Date

☒ I agree with the determination above.
☐ I disagree with the determination above and understand that I have the right to request an impartial due process hearing by filing a written request for a hearing with the Section 504 Coordinator.
☐ I understand that Christian Swiatek is eligible for a Section 504 Plan but do not wish to have a Plan implemented for Christian at this time. I understand that I may request that the District review Christian's disability-related needs in the future.
☒ I have received the Notice of Procedural Safeguards under Section 504.

_____          ___3/22/21___
Signature of Parent/Guardian          Date

**ENCLOSURE:** Notice of Section 504 Procedural Safeguards.


NOTE! KRISTINE EXPRESSED CONCERN ABOUT THE
TEACHERS NOTES BEING AVAILABLE. SEE
PAGE 3/5. WHILE IT IS IMPORTANT HE
HAS ACCESS TO THE CURRICULUM WE
UNDERSTAND "NOTES" ARE NOT ALWAYS PRACTICAL.

3/22/21  AS.

## Notice of Section 504 Procedural Safeguards

The following is a brief summary description of the rights provided by Section 504 of the Rehabilitation Act of 1973 to students with disabilities, or suspected disabilities, and some related rights provided by Title VI of the Civil Rights Act of 1964 and the Family Educational Rights and Privacy Act. The intent of the law is to keep you fully informed about decisions concerning your child and to inform you of your rights in the event you disagree with any decisions concerning your child. You have the right to:

1. Have the district advise you of your rights under federal law;

2. Receive notice with respect to Section 504 identification, evaluation, educational program and/or placement of your child;

3. Have an evaluation and placement decision for your child based upon information from a variety of sources and which is made by a team of persons knowledgeable about the student, the meaning of evaluation data, and placement options;

4. Have your child receive a free appropriate public education, which is the provision of regular or special education and related aids and services that are designed to meet individual educational needs of your child as adequately as the needs of students without disabilities are met, if the child is Section 504 eligible;

5. Have your child be educated with non-disabled students to the maximum extent appropriate, if the child is Section 504 eligible;

6. Have your child take part in and receive benefits from the District without discrimination on the basis of disability;

7. Have your child educated in facilities and receive services comparable to those provided to non-disabled students;

8. Examine all relevant records of your child, including those relating to decisions about your child's Section 504 identification, evaluation, educational program, and placement; and obtain copies of those records at a reasonable cost, unless the fee would effectively deny you access to the records;

9. Receive information in your native language and primary mode of communication;

10. Have a periodic re-evaluation of your child, including an evaluation before any significant change of placement;

11. Have your child given an equal opportunity to participate in nonacademic and extracurricular activities offered by the District;

12. Request and participate in an impartial due process hearing regarding the identification, evaluation, or placement of your child, including a right to be represented by counsel in that process and to appeal an adverse decision;

13. File a complaint in accordance with the District's grievance procedures or with the U.S. Department of Education, Office for Civil Rights.

# EXHIBIT 5



*Utica High School*

47255 Shelby Road
Utica, Michigan 48317

Phone: (586) 797-2200
Fax:   (586) 797-2201

April 7, 2021

Mr. John Swiatek
46208 Meadowview Dr.
Shelby Twp., MI 48317

Dear Mr. Swiatek.

Thank you for your inquiry about reimbursement for Dr. Smith's evaluation.  You will
recall you filed a state complaint alleging the District had violated IDEA and Michigan
special education laws by denying the same request, which was dismissed by the
Michigan Department of Education.  Your reference to the United States Department of
Education's Resource Guide does not provide an alternate basis for reimbursement.
Among other things, the District did not determine Dr. Smith's assessment was necessary
to ensure a 504 evaluation was completed at no cost to the parents.

Separately, your request for a re-evaluation is still outstanding.  The District completed a
REED sent it to you on March 17, 2021; but, to date, you have not provided the District
with consent to move forward.  Providing consent is entirely your prerogative.  However,
the District cannot proceed with the re-evaluation absent your consent.  Furthermore,
given how late it already is in Christian's senior year, we are quickly reaching the point
when a re-evaluation is moot.

Thank you for your attention to this matter.  Please see the enclosed prior written notice.
Additionally, I have enclosed a copy of your rights under Section 504.

Sincerely,

Tom Lietz
Principal

# EXHIBIT 6

6/11/2021                    Summary of Performance for Christian Swia      (837470504)

## Utica Community Schools
### 11303 Greendale Dr
### Sterling Heights, Michigan 48312-2925
### Phone: (586) 797-1000

*DATED 6/11/21*
*DOES NOT MENTION*
*DYSLEXIA IN*
*TRANSITION PLAN.*

| Summary of Performance | | |
|---|---|---|
| **Student:** Christian Swiatek | **Date of Birth:** 07/03/2003 | **Date:** 05/26/2021 |
| **UIC:** 1837470504 | **Grade:** Twelfth grade | **School:** Utica Virtual HS |
| **Resident District:** Utica | **Attending District:** Utica | |

**This student is expected to:**

☒ Graduate with a regular high school diploma on 06/05/2021

*EVEN THOUGH SOX WAS PUT IN*
*PLACE FOR DYSLEXIA, UCS DOES NOT*
*ADDRESS DYSLEXIA IN HIS "TRANSITION*
*PLAN" (SUMMARY OF PERFORMANCE)*

**Summary of Academic Achievement and Functional Performance**

The previous IEP, student survey and/or interview, parent input, teacher/ staff observations, EDP, cognitive/ academic testing, anecdotal records, and district/ state assessments were updated/ reviewed in March 2021.

Christian is 12th grade and has stated that he is interested in attending Lawrence Technology University to study Electrical Engineering. After further education/training, he is planning on becoming an Electrical Engineer. After exiting high school, Christian will live either at home or on campus while in college and will be able to access the community independently or with support. He enjoys many activities: Dirt Bikes, watching movies, concerts, traveling, camping, and playing video games. Christian will be able to access the community independently. He will take his driver's license classes this year.

Information/data reviewed show that in post-secondary education/training, Christian can: has a high motivation to excel, completes tasks on his own, and maintains good grades in all his classes. He is able to independently read and understand grade-level material, interpret data, and create accurate calculations of mathematical concepts.

Christian has difficulty accurately understanding and following classroom instruction without support due to his hearing loss and will need support in this area. In this area, he has difficulty with following directions due to his hearing loss. In the area of post-secondary education/training, Christian will need continued accommodations and supports. Christian will explore classes related to his interests and will research programs in the area. Christian has indicated that he does not have difficulty reading text in class and expressed to Utica AT Consultant Jerry Anderson that he did not feel he needs access to a program on his laptop that would read text aloud for him. Christian also indicated that the AirPods headphones he is using are sufficient to meet his hearing needs at this time. Christian also stated that he is comfortable advocating for himself when necessary and is not concerned about having to do so next year in the college/university setting.

In the area of employment, current data/information shows that: Christian is a hard worker, responsible, and has a positive attitude with a determination to excel. In this area, he may have difficulty with accurately following instructions. Christian's hearing loss impacts his ability to access information presented auditorily. It may also adversely affect his communication between peers and adults. To support Christian in employment, he should explore electrical engineering-related careers and job opportunities

6/11/2021                              Summary of Performance for Christian Swia      837470504)

In the area of independent living, Christian does chores at home. He does his laundry, cleans and helps in yard work, and enjoys outdoor sports and video games. In this area, he is developing the skills for independent living without support. He will also begin working on obtaining his driver's license. Therefore, Independent Living is not an area of need for Christian based on current data.

TAGG (Transition Assessment & Goal Generator) Profile - 5/6/2020

Area of Greatest Strength - Student Involvement in the IEP
Areas of Relative Strength - Persistence, Employment
Area of Greatest Need - Disability Awareness
Areas of Relative Need - Strengths and Limitations, Support Community, Goal Setting & Attainment
Christian' s postsecondary training and employment goals may be impacted by his hearing deficits and his ability to access information presented auditorily specifically when not wearing his hearing aids. It may also adversely affect his communication between peers and adults. These concerns are addressed in supplementary aids/ services so he can fully access the curriculum.

The results of Christian's most recent TAGG assessment indicate that he would benefit from opportunities to increase his awareness of his strengths and limitations, especially as related to his disability, as well as identifying community supports and goal setting. Christian will have opportunities to engage in transition-related activities designed to address these needs.

| Post-Secondary Goals | Recommendations to Assist Christian in Meeting Post-Secondary Goals |
|---|---|
| | (List **prior accommodations** that afforded the student access to high school curriculum) |

**Education/Training**

- ☐ G.E.D.
- ☐ Night School
- ☐ Adult Education
- ☐ Paying for Schooling
- ☒ College/University
- ☐ Community College
- ☐ Vocational/Trade School
- ☐ Armed Services
- ☐ Special Studies
- ☐ Other Continuing

Christian participates in general education classes at Utica High School and CSI. Christian was in the Virtual Academy H.S. his senior year. He should meet with support services at LTU to determine appropriate accommodations for his courses such as extended time, tutoring and test reading.
Christian can: has a high motivation to excel, completes tasks on his own, and maintains good grades in all his classes. He is able to independently read and understand grade-level material, interpret data, and create accurate calculations of mathematical concepts.

**Related Adult Services**

Christian may contact adult agencies other then Lawrence Tech University after graduation.

Christian should call Michigan Rehabilitation Services (MRS) 586-412-1510 to talk to an adult counselor to

6/11/2021                    Summary of Performance for Christian Swiat      (37470504)

determine eligibility for support.

**Community Participation**

After high school graduation, Christian will access the community independently.

Student interest interview: Christian will be involved in activities with family and friends. He will be taking drivers training courses this year. Currently, He participates in school activities and he enjoys many activities: Dirt Bikes, watching movies, concerts, traveling, camping, and playing video games.

**Employment**

After college or career training, Christian will obtain employment in the area of: Electrical Engineer

In the area of employment, current data/information shows that: Christian is a hard worker, responsible, and has a positive attitude with a determination to excel. In this area, he may have difficulty with accurately following instructions. Christian's hearing loss impacts specifically when not wearing his hearing aids his ability to access information presented auditorily. It may also adversely affect his communication between peers and adults. To support Christian in employment, he should explore electrical engineering-related careers and job opportunities. He has entry level employability skills. At times he should write things down and take his time on task completion. He should use timers and alarms to help with organization and time management

**Daily Living Skills**

After high school graduation, he will live at home with family while attending College.

In the area of independent living, Christian does chores at home. He does his laundry, cleans and helps in yard work, and enjoys outdoor sports and video games. In this area, he is developing the skills for independent living without support. He will also begin working on obtaining his driver's license. Therefore, Independent Living is not an area of need for Christian based on current data.

| Matthew Marulli | Resource Program | 06/04/2021 |
|---|---|---|
| Person Completing Summary of Performance | Title | Date |

6/11/2021                          Summary of Performance for Christian Swiat      337470504)

**Student Name:** Christian Swiatek                          **Meeting Date:** 05/26/2021

## Prior Written Notice

Christian completed the required credits for the Michigan Merit Curriculum leading to a high school diploma on 6/5/2021 pending completion of the remaining requirements and high school goals. If the student does not complete the remaining requirements then the end date for special education program and/or services will be revised through an IEP Team meeting or an amendment without convening an IEP Team meeting.

| Options Considered but Not Selected | Reason Not Selected |
|---|---|
| ☑ No other options were considered. | |

The *Procedural Safeguards Notice* that you received describes protections under the Individuals with Disabilities Education Act (IDEA). Information is also available from:

- MICHIGAN ALLIANCE FOR FAMILIES, 1819 South Wagner Road, PO Box 1406, Ann Arbor, MI 49106; 1-800-552-4821; www.michiganallianceforfamilies.org

- MICHIGAN DEPARTMENT OF EDUCATION, OFFICE OF SPECIAL EDUCATION AND EARLY INTERVENTION SERVICES, PO Box 30008, Lansing, MI 48909; 1-517-373-0923; www.michigan.gov/mde

- MICHIGAN PROTECTION AND ADVOCACY, 4095 Legacy Parkway, Suite 500, Lansing, MI 48911-4263; 1-800-288-5923; www.mpas.org

District Superintendent/Designee: _____      Date: _____

# EXHIBIT 7

409 E Jefferson Avenue, Fifth
Floor
Detroit, MI 48226

⟁ MERITAS LAW FIRMS WORLDWIDE

**ROBERT A. LUSK**
Attorney at Law

248.988.5662
248.436.6635 fax
luskr@millerjohnson.com

July 2, 2021

**VIA FIRST CLASS MAIL**

Mr. John A. Swiatek
46208 Meadowview Drive
Shelby Township, MI 48317

Re:    Communications with Utica Community Schools

Dear Mr. Swiatek:

This firm serves as legal counsel for Utica Community Schools (the District). The District asked us to respond to the many recent emails you have sent to various District personnel, including your email to Mr. Lietz requesting mediation.

The District does not believe mediation would be productive at this time. Your emails, as we read them, simply indicate your desire to re-hash disputes concerning your son's education; disputes that have already been resolved by the Michigan Department of Education and/or the District. These dispute are also moot given the fact your son has already graduated from the District.

All future emails on this subject should be directed to Mr. Waymaster. Presently, he is the only person designated by the District to address your questions and concerns.

Thank you for your attention to this matter. You may feel free to contact me directly if you have any questions or comments

Sincerely,

MILLER JOHNSON

By

Robert A. Lusk

RAL:crp
cc:    Mr. Sean Waymaster

MJ_DMS 33337866v1

# EXHIBIT 8



# Model Due Process Complaint/Request for Hearing Form

**Michigan Department of Education Office of Special Education**
**June 2022**

## Purpose

This model form may be used to submit a request for a due process hearing to resolve a disagreement about the identification, evaluation, eligibility, educational placement, or manifestation determination of a student, or regarding the provision of a free appropriate public education for a student under the Individuals with Disabilities Education Act (IDEA). For any complaint that involves a child with an Individualized Family Service Plan (IFSP), the Michigan Department of Education (MDE) Office of Great Start/Early Childhood Development and Family Education is notified by the Office of Special Education (OSE) to ensure coordination and involvement of IDEA Part C staff in the process.

## Instructions

Complete this form and deliver by mail, electronically (email or fax), or hand-deliver it to the MDE OSE using the contact information on page 4. The use of this form is not required; it is provided to assist in filing a due process complaint. **Note: The * indicates required information.**

## Complainant Contact Information

Name*:  John Swiatek

Address*:  46208 Meadowview Drive

City*:  Shelby Township          State*:  MI          Zip Code*:  48317

Email:  johnaswiatek@gmail.com          Phone Number:  248-302-2400

## Student Information

Name*:  Christian Swiatek          Age:          DOB: 7/3/03          Grade:

Address*:  46208 Meadowview Drive

(provide contact information if student is homeless)

City*:  Shelby Township          State*:  MI          Zip Code*:  48317

## Parent/Guardian Information (if other than the person filing the complaint)

Name:

Email:          Phone Number:

## School Information

Name of the school the student attends*:  Utica High School

Name of the district(s) the complaint is filed against:  Utice Community Schools (UCS)



1

## Problem and Facts *

What is the nature of the problem that relates to the student's special education program and what are the facts that relate to the problem? Include dates, if known. (1,000 character limit. Attach additional pages if necessary.)

See attached

## Proposed Resolution (to the extent known) *

Briefly explain how you think the issue could be resolved. (2,600 character limit. Attach additional pages if necessary.)

See attached



## Mediation: Release of Contact Information to SEMS

**The Michigan Department of Education (MDE) encourages parents and districts to resolve disputes through informal dispute resolution processes, including mediation.**

Mediation is a voluntary process. A trained, impartial mediator assists the parties in reaching a mutually acceptable resolution of the dispute between the parties. Mediators are not affiliated with any local school district nor do they represent any of the parties in a complaint. Discussions during mediation are confidential.

The MDE provides mediation services at no cost to the complainant or the district if they use Special Education Mediation Services (SEMS). SEMS if funded by an MDE grant.

If you are interested in resolving a complaint through mediation or informal resolution, the MDE will, with your consent, forward your name and telephone number to SEMS. SEMS will contact you to tell you more about mediation and other alternative dispute resolution options. If you choose to participate in mediation, SEMS will contact the district to determine if the district agrees to participate in mediation. If so, SEMS will make the arrangements and schedule the mediation meeting(s).

If you and the district agree to participate in mediation after a due process complaint has been filed, the hearing timeline may be extended until the mediation process is completed. If the issue is resolved through mediation, the complaint will be withdrawn or dismissed. If the issue is not resolved, the MDE will proceed with the due process hearing.

For more information about mediation and informal dispute resolution, see the MDE Special Education Due Process Complaint Procedures or contact Special Education Mediation Services (SEMS) at 833-KIDSlST (833-543-7178) or the SEMS website (http://MiKidslst.org).

◎ Yes, I am interested in mediation and authorize the OSE to forward my name and contact information to SEMS. I understand SEMS will contact me directly.

◯ No, I am not interested in mediation. I understand SEMS will not contact me, and at any point, I can contact the public agency or SEMS to request mediation. Visit the SEMS website or call 833-543-7178 for more information.



## Submit Due Process Complaint/Request for Hearing

The due process complaint/request for hearing must be signed and mailed, hand delivered, or electronically (fax, email) to submit to the MDE.



ID ibWUMVWuGAFdeWvyVzxJQB4d

Signature*                              John Swiatek                    4/7/2023

                                        Printed Name                    Date

Michigan Department of Education
Office of Special Education – Due Process Complaints
608 West Allegan
P.O. Box 30008
Lansing, MI 48909
Fax: 517-241-7141
Email: MDE-MIComplaints@michigan.gov

**Due Process Complaint/Request for Hearing – Utica Community School District**

**Complainant Contact Information:**
John Swiatek
46208 Meadowview Drive
Shelby Township, MI 48317
Email: johnaswiatek@gmail.com
Phone: (248) 302-2400

**Student Information:**
Christian Swiatek
DOB: 07/03/2003
46208 Meadowview Drive
Shelby Township, MI 48317

**School Information:**
Utica High School
Utica Community Schools (UCS)

**Problem and Facts:**
In 2010, Christian Swiatek was diagnosed with moderate to severe dyslexia. Dyslexia is a lifelong condition that can be remediated, but not cured. Despite the early diagnosis, for the remainder of his years at UCS, UCS failed to address or even acknowledge his dyslexia. To mitigate life changing consequences and damages, the Swiateks enrolled Christian in private tutoring at Brainspring Learning Center from 2010 to 2017. Due to the severity of Christian's dyslexia, 384 Orton-Gillingham sessions were paid for by the Swiateks. The Swiatek's also worked directly with Christian's teachers each semester informally to further mitigate damages as a result of Christians dyslexia. Christian was also diagnosed with hearing loss in elementary school (hearing loss is associated with 25% of cases with severe dyslexia). In 2019 and again in 2020, Christian was denied dyslexia accommodations on the SAT by the College Board due to UCS's administrative failures to properly document and formally implement his dyslexia accommodations. Over the years, the Swiateks attempted to get an Individual Education Program (IEP) or 504 implemented for Christian's for dyslexia. An Independent Educational Evaluation was approved by UCS in February 2020, paid for by the Swiateks, and confirmed Christian's dyslexia diagnosis. In 2020, UCS stated in writing that they refused to even acknowledge a "suspicion of dyslexia" in spite of his 2010 diagnosis, being placed in a Title 1 program called "Super Stallions" at West Utica Elementary, his pediatrician's 2019 letter, and the results of the IEE performed in 2020 by Dr. Smith, a neuropsychologist and nationally recognized dyslexia expert. In April 2021, After the SATs were taken by the other high school juniors and after the Michigan Department of Education confirmed that Christian has dyslexia, the Utica High School principal finally acknowledged Christian's dyslexia and helped implement a 504 plan (just weeks before graduating high school) so that Christian could appropriately receive accommodations in college. Christian was entitled to,

and UCS was obligated to provide, a free appropriate public education (FAPE). A FAPE can include outside tutoring, etc. if the school is not equipped to provide the appropriate education. Further, Christian was entitled to an IEE at the public's expense. UCS approved the IEE but has denied reimbursement to the Swiateks for reasons that are ever changing. Over the years, UCS has claimed in writing that his elementary school records were lost, held IEP and MET meetings without the parents present, and violated the IDEA statutes in many other ways. To date, UCS has not met its obligations under FAPE to reimburse the Swiateks for any of the testing or treatment for Christian Swiatek's qualifying Multiple Disabilities (deafness and dyslexia).

**Proposed Resolution:**

Christian has since graduated from UCS and is now enrolled at Lawrence Tech University (LTU). Because he is no longer a UCS student, the proposed resolution cannot include any educational services at UCS. The Swiateks seek reimbursement for the funds they were forced to incur due to UCS's failure to provide a FAPE and failure to reimburse the Swiateks. To provide a FAPE for the 13 years Christian attended UCS schools, the Swiateks are seeking financial relief for the seven years of outside tutoring required for Christian in a program designed for students with moderate to severe dyslexia. A FAPE can include outside tutoring, remediation, etc. to be paid at the public's expense. Similarly, UCS was obligated to allow Christian access to an IEE at the public's expense to determine whether or not he was eligible for an IEP for dyslexia. UCS approved the IEE but has never reimbursed the Swiateks.   Under the IDEA, UCS was obligated to 'ensure' the parents were reimbursed for the IEE and if they believed the IEE did not meet district criteria, they needed to seek a hearing to demonstrate their position.  Since the school district was seeking the relief, they had the obligation to call for the hearing and failed to do so. This was yet another disregard for the IDEA Procedural Safeguards and demonstrates a second failure to provide Christian with a FAPE. The Swiateks request a neutral due process hearing, reimbursement for the cost of all outside tutoring, reimbursement for the cost of Dr. Smith's report, and attorney's fees.

## eSignature Details

**Signer ID:**          **ibWUMVWuGAFdeWvyVzxJQB4d**
Signed by:              John Swiatek
Sent to email:          johnaswiatek@gmail.com
IP Address:             96.27.12.152
Signed at:              Apr 7 2023, 10:02 am EDT

# EXHIBIT 9

## Submit Due Process Complaint/Request for Hearing

The due process complaint/request for hearing must be signed and mailed, hand delivered, or electronically (fax, email) to submit to the MDE.

| Signature* | Printed Name | Date |
|---|---|---|
| | CHRISTIAN SWIATEK | 4/7/23 |

Michigan Department of Education
Office of Special Education – Due Process Complaints
608 West Allegan
P.O. Box 30008
Lansing, MI 48909
Fax: 517-241-7141
Email: MDE-MIComplaints@michigan.gov

MICHIGAN
Department of Education

# EXHIBIT 10

**STATE OF MICHIGAN**
**MICHIGAN OFFICE OF ADMINISTRATIVE HEARINGS AND RULES**

IN THE MATTER OF:

J.S. o/b/o C.S.,
     **Petitioner**

v

**Utica Community Schools,**

     **Respondent**

_____/

Docket No.: 23-016099

Case No.:    DP-23-0040

Agency:     Education

Case Type: ED Sp Ed Regular

Filing Type: Appeal

Issued and entered
this 29th day of June 2023
by: Michael J. St. John
Administrative Law Judge

### DECISION AND ORDER GRANTING
### RESPONDENT'S MOTION FOR SUMMARY DISPOSITION

## Procedural History

On April 11, 2023, Petitioner[1] Parent filed a Due Process Complaint (Complaint) on behalf of the Student against Respondent Utica Community Schools (Respondent) under the Individuals with Disabilities Education Act (IDEA), 25 United States Code (USC) 1400 *et seq.* with the Michigan Department of Education (MDE), seeking "reimbursement for the funds they were forced to incur due to UCS's failure to provide a FAPE and failure to reimburse the <Parents>." This Complaint was forwarded to the Michigan Office of Administrative Hearings and Rules (MOAHR) and assigned to the undersigned Administrative Law Judge (ALJ) Michael J. St. John.

On April 20, 2023, a prehearing conference was held which, amongst other things, narrowed the issues for hearing to whether the Parent/Student should be reimbursed for the costs of an IEE and/or tutoring services and in what amount. April 20, 2023, Order Paragraph 2a and b. Neither party noted any exceptions to that Order as contemplated by Paragraph 30.

---

[1] As discussed elsewhere in this Decision, there is some confusion about who filed the due process complaint and whether the Parent or Student is the proper Petitioner.

**23-016099**
**Page 2**

On May 22, 2023, Respondent filed the Motion for Summary Disposition (Motion).  On June 12, 2023, Petitioner filed the Response, and on June 16, 2023, Respondent filed the Reply.  All filings were timely.

Neither party requested oral argument in their motions.  Pursuant to Rule 792.10115(5), the Administrative Law Judge has the discretion to allow or deny oral argument.  In this matter, because oral arguments were not requested and no issue remains in question following the parties' thorough written briefs, oral argument is not necessary.

## ISSUE

Should the matter be dismissed?

## APPLICABLE LAW

MCL 24.272(3) holds that in administrative hearings:

> The parties shall be given an opportunity to present oral and written arguments on issues of law and policy and an opportunity to present evidence and argument on issues of fact.

Neither IDEA, the Code of Federal Regulations, nor the Michigan Administrative Rules for Special Education (MARSE) provide any guidance regarding a Motion for Summary Disposition. However, the Michigan Administrative Hearing System Rules provide:

> (1) A party may make a motion for summary disposition of all or part of a proceeding. When an administrative law judge does not have final decision authority, he or she may issue a proposal for decision granting summary disposition on all or part of a proceeding if he or she determines that any of the following exists:
>
>   (a) There is no genuine issue of material fact.
>   (b) There is a failure to state a claim for which relief may be granted.
>   (c) There is a lack of jurisdiction or standing.
>
> (2) If the administrative law judge has final decision authority, he or she may determine the motion for summary decision without first issuing a proposal for decision.
> R 792.10129 Summary disposition

The relevant Michigan Court Rule 2.116 provides in relevant part:

23-016099
Page 3

(B) Motion.

    (1) A party may move for dismissal of or judgment on all or part of a claim in accordance with this rule. A party against whom a defense is asserted may move under this rule for summary disposition of the defense.

* * *

(C) Grounds. The motion may be based on one or more of these grounds, and must specify the grounds on which it is based.

* * *

    (1) The court lacks jurisdiction over the person or property.

* * *

    (6) Another action has been initiated between the same parties involving the same claim.

* * *

    (8) The opposing party has failed to state a claim on which relief can be granted.

* * *

    (10) Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law.

## CONCLUSIONS OF LAW

### Standard for Summary Disposition

A motion for summary disposition may grant relief to the moving party as a matter of law if there is no genuine issue of material fact and/or where there has been a failure to state a claim on which relief can be granted. Motions for summary disposition are analyzed with the same standards as motions filed under Michigan Court Rule 2.116. *Airgas Specialty Products v MIOSHA*, Michigan Court of Appeals No. 351105, August 26, 2021.

23-016099
Page 4

The proper standard for a motion for failure to state a claim for which relief may be granted under the equivalent court rule, MCR 2.116(C)(8) is not dependent on the particular facts of a case, but rather tests the legal sufficiency of the pleadings. *Lane v Kindercare Learning Ctrs*, 231 Mich App 689 (1998) and *People v Lown*, 448 Mich 242 (2011). The proper standard for a motion under MCR 2.116(C)(10) for lack of genuine issue of material fact requires that all well-plead allegations to be accepted as true. A motion under both the administrative rule and the Michigan Court Rule tests the factual support for a claim and must be granted if the affidavits and documentary evidence show there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446 (1999).

When considering a motion for summary disposition, all evidence submitted by the parties must be considered in the light most favorable to the party opposing the motion." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich. 152, 160 (2019). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bennett v Russell*, 322 Mich.App. 638, 642 (2018) (cleaned up). "Affidavits, depositions, admissions, or other documentary evidence may be submitted by a party to support or oppose the grounds asserted in the motion." MCR 2.116(G)(2).

Respondent has moved for summary disposition based on the grounds of 1) Petitioner Parent's lack of standing, 2) failure to state a claim upon which relief can be granted (because the reimbursement claims are for services provided outside the two-year statute of limitations) and 3) *res judicata* and/or collateral estoppel (because these same issues were addressed in a state complaint).

A due process hearing may address any issues "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." 34 CFR 300.507(a).[2] MARSE Rule 340.1742f(2) similarly lists issues that may be the subject matter of a special education due process hearing including: (a) Identification, (b) Evaluation, (c) Educational Placement, and (d) Provision of a FAPE. This case focuses on whether the Respondent provided the Student with a FAPE or whether the Parent-provided services were required and therefore worthy of reimbursement.

<u>Petitioner Student is the proper petitioner but even if there is a procedural deficiency, dismissal is not the appropriate remedy</u>.

A Student's educational rights become the Student's to advocate for upon reaching the age of majority: usually 18 years of age unless circumstances dictate otherwise, none of which are evident in this case. 20 USC §1415(m)(1)(B); 34 CFR 300.520(a)(1)(ii).

---

[2] 34 CFR 300.532(a) which governs disciplinary decisions is not applicable to this case.

23-016099
Page 5

Although somewhat counterintuitive, there is no exception for claims of reimbursement that were expended by the parents as are the claims in this case.

It is unclear whether the Student has signed the Complaint in this case. Petitioner claims that Student has signed the Complaint. The only copy of the Complaint possessed by the Administrative Law Judge has only the Parent's signature. The case was captioned by the Michigan Department of Education with the Parent filing the Complaint on behalf of the Student.

Regardless of whether the Student signed the Complaint or an Amended Complaint, the most appropriate remedy if such a procedural deficiency existed would not be dismissal but rather to have the Petitioner file an amended complaint that meets all the procedural requirements. Because, as noted below, the statute of limitations has passed for this case requiring dismissal, it is unnecessary to determine whether an amended due process complaint is required in this case.

<u>Neither *res judicata* nor collateral estoppel prevents filing a due process complaint on the same or similar issues as a previously adjudicated state complaint.</u>

*Res judicata* bars a subsequent action between the same parties when the facts or evidence essential to the action are identical to the facts or evidence in a prior action. *Dart* v *Dart*, 460 Mich 573 (1999). *Res judicata* requires that: (1) the prior action was decided on the merits; (2) the decree in the prior action was a final decision; (3) the matter contested in the second case was or could have been resolved in the first case; and (4) both actions involved the same parties or their privies. *Kosiel* v *Arrow Liquors Corp*, 446 Mich 374, 379 (1994); *Adair* v *Michigan*, 470 Mich. 105, 121 (2004). The related issue of collateral estoppel requires that (1) a question of fact essential to the judgement was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel. *Estes* v *Titus*, 481 Mich 573 (2008); *People v Trakhtenberg,* 493 Mich 38, 48-51; (2012).

Although the state complaint and due process complaint are separate, they are linked. The state complaint process is meant to be an informal process. The due process complaint process, while still far less formal than a court proceeding, is meant to be a more formal process. A due process decision by an Administrative Law Judge supersedes any state complaint decision. *Letter to Johnson*, 18 IDELR 589 (OSPERS 1991). When either a parent or the district disagrees with the conclusions in a state complaint, either (or both) has the option to file a due process complaint.

While not a direct appeal of the state complaint, the due process complaint serves the same purpose: to re-examine the underlying issues and reach a conclusion. A party that disagreed with a state complaint decision is precluded from judicial review until the party

23-016099
Page 6

has filed a due process complaint to exhaust administrative remedies. *Southfield Pub Sch v Dep't of Ed*, unpublished *per curiam* opinion of the Court of Appeals, entered September 16, 2014 (Docket No. 316856). "The filing of a due process complaint initiates the administrative appeals procedure. Thus, the due process complaint procedure in essence serves as a reconsideration of the results of the state complaint process." *Id* at p. 4.

Because the state complaint is not a final judgement and the filing of a due process complaint is a necessary step to exhaust administrative appeals, neither collateral estoppel nor *res judicata* serves to prevent the adjudication of this Due Process Complaint.

<u>Petitioner's claims are outside the two-year statute of limitations and no exception applies</u>.

Petitioner's Complaint references private tutoring "from 2010 to 2017" and an IEE that "was approved by UCS in February 2020, paid for by the [Parents]" and that references "the IEE performed in 2020". Although not entirely clear from the Complaint when Respondent first refused to pay for the IEE, Petitioner Parent and his wife filed their state complaint on December 3, 2020, which included allegations of a violation of IDEA and failure to provide FAPE, in part, because the Respondent refuse to pay for the IEE. At the latest, in December 2020, Petitioner knew or should have known that the Respondent was refusing to pay for the IEE and that a due process hearing may be necessary to seek reimbursement.

A due process hearing must be filed within two years "of the date the parent [or Student] … knew or should have known about the alleged action that forms the basis of the complaint." 20 USC 1415(f)(3)(C) and 34 CFR 300.507(a)(2). There are two exceptions under 34 CFR 300.511(f): misrepresentation and withholding required information.

Petitioner, in their Response starting on page 7, argues that the Respondent failed to follow the procedural safeguards of the IEE process. Petitioner asserts that the statute of limitations began to run on the date that the Respondent failed to reimburse the Petitioner for the IEE. This is an appropriate accrual date since the IEE itself is not at issue, but rather the Respondent's refusal to pay for that IEE. A claim accrues for purposes of the statute of limitations when a petitioner learns of the injury that is a basis for the action. *M.D. v. Southington Board of Ed.* (2d Cir. 2003). Here that is when the Petitioner knew or should have known that the Respondent school district was not going to pay/reimburse for the IEE.

However, Petitioner next argues that each denial by the Respondent constitutes a separate accrual date for their claim up through a July 2021 attorney letter indicating a denial of a mediation request. While Petitioner(s) may have been hopeful that they would

23-016099
Page 7

receive payment for the IEE for more than a year after the IEE was performed, the claim accrued when the Respondent first refused to pay for the IEE. Subsequent denials did not serve to extend the date that the Petitioner knew or should have known about their claim of action. An equitable tolling exception is not listed in IDEA and is not available to extend the two-year statute of limitations. *Holden v Miller-Smith*, 28 F. Supp. 3d 729 (W.D. Mich 2014). Similarly, a continuing violations exception is not listed in IDEA and is also not available to extend the two-year statute of limitations. *G.L. v. Ligonier Valley Sch. Dist. Auth.,* 802 F.3d 601, 625 (3d Cir. 2015); *Reyes ex rel. E.M. v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 255 (5th Cir. 2017). Each Respondent notification and affirmation of their prior decision not to reimburse for the IEE did not constitute a new violation. This should be contrasted with an ongoing failure to implement a provision of IDEA (such as child find or to implement an agreed-upon IEP service) where each day that the required service is not performed constitutes a new and separate violation. *Indep. Sch. Dist. No. 283 v. E.M.D.H.,* 960 F.3d 1073, 1083 (8th Cir. 2020).

Petitioner next argues that because Respondent failed to initiate a due process hearing within the two-year period that Respondent must reimburse the Petitioner for the IEE. Petitioner cites no authority for this proposition. Even assuming without deciding that the Respondent was procedurally deficient in their handling of the IEE and reimbursement, this would not extend the time that Petitioner had to file their due process complaint; only the two specific exceptions extend the statute of limitations.

Petitioner argues that because Respondent did not believe that the private tutoring that the Petitioner unilaterally obtained and paid for was necessary, that the Respondent made misrepresentations and withheld information from the Petitioner. Petitioner alleges that Respondent withheld some educational records from the Petitioner but, even if true, nothing the Respondent did (or did not do that they were supposed to do) caused the Petitioner to not understand that the Student was not receiving FAPE. Petitioner clearly understood their claim when they filed their state complaint.

Petitioner unilaterally obtained tutoring for the Student because Petitioner believed that the Respondent was not providing the Student FAPE. Even if the Respondent's disagreements about the necessity of tutoring could be considered a misrepresentation, there is no evidence that the Respondent knowingly and intentionally made those statements to prevent the filing of a due process complaint or that the Petitioner relied upon the Respondent's assertions causing the delay in filing. Quite the contrary, Petitioner continued to provide tutoring that the Respondent indicated was unnecessary for seven years and filed a state complaint regarding these same issues.

Petitioner had all the information necessary to file their due process complaint as early as 2010 and continuing throughout the time that they provided the Student with the tutoring that they thought was necessary. To utilize the Petitioner's argument about

23-016099
Page 8

misrepresentation would negate the two-year statute of limitations since any disagreement would constitute a misrepresentation; the exception would completely swallow the rule since every due process complaint necessarily involves a disagreement between a parent/student and the school district.

The exceptions to the two-year statute of limitations are intended to be narrow. Specific misrepresentations by the school district require a showing of intent on the part of the school district to cause the parent(s) and/or student to believe that the problem had been resolved, rather than merely negligently making such statements. *D.K. v Abington School District*, 696 F.3d 233 (3d Cir. 2012). There has been no allegation that any of Respondent's statements were intended to prevent a due process complaint or that they indeed caused the Petitioner to delay their filing. Although not quite as narrow since there is not an intent requirement, the withholding information exception does require that the district's withholding caused the parents' failure to request a timely hearing. *Id.* That is not the case here.

<u>Attorney's fees are unavailable at the administrative hearing level.</u>

Sanctions must be "authorized by law" pursuant to Rule 792.11803. Both state and federal courts have the inherent authority to sanction litigants and their attorneys as judicial branch courts. Administrative tribunals, conducting quasi-judicial executive branch hearings, have no such inherent authority. "In the absence of an express legislative conferral of authority, an administrative agency generally lacks the powers of a court of equity." *Delke v. Scheuren,* 185 Mich.App. 326, 332 (1990). The tribunal's authority comes from the Administrative Procedures Act, IDEA and its CFRs, and the Michigan Special Education and (now-outdatedly named) Michigan Administrative Hearing System rules. None of these authorities support the proposition that an Administrative Law Judge may sanction an attorney or party with attorney fees in a special education administrative hearing.

Rule 792.11803 delineates the Administrative Law Judge's power and authority includes the ability to impose sanctions. However, those sanctions are limited to a specific instance and do not include filing frivolous claims. Similarly, sanctions are specifically limited to "any other sanction authorized by law."

34 CFR 300.517 contemplates only a court (not the tribunal) awarding attorney fees after resolution of the case which has only now, with this Order, occurred here. Because there is no authority for an Administrative Law Judge to award attorney fees in special education due process cases, it is unnecessary to determine whether the Petitioner's Complaint is frivolous. Attorney fees are not awarded here.

23-016099
Page 9

Conclusion

It is always the preference of the tribunal to allow parties the opportunity to present their case and to be heard at a hearing.  However, in this case, the allegations relate back to events between three and thirteen years prior to the filing of the Complaint.  Petitioner knew or should have known the facts that form the basis for the Complaint more than two years prior to when the Complaint was filed.  Neither of the two narrow exceptions to the two-year statute of limitations applies to the facts of this case.  Petitioner's case must be dismissed.  The Administrative Law Judge wishes the Parent and the Student well in their continued efforts to ensure the Student's academic success.

**ORDER**

**NOW THEREFORE IT IS ORDERED** that Respondent's Motion to dismiss for lack of jurisdiction is **DENIED.**

**IT IS FURTHER ORDERED** that Respondent's Motion to dismiss for *res judicata* and/or collateral estoppel is **DENIED.**

**IT IS FURTHER ORDERED** that Respondent's Motion for Summary Disposition for Absence of a Genuine Issue of Material Fact and Failure to State a Claim within the two-year statute of limitations is **GRANTED.**

**IT IS FURTHER ORDERED** that the final prehearing conference scheduled for August 7, 2023, and the hearing scheduled for August 8, 2023, are cancelled.

**IT IS FURTHER ORDERED** that this case is dismissed with prejudice.

**A party aggrieved by this decision may seek judicial review by filing an action in a court of competent jurisdiction within 90 days of the date of this order.**

**Michael J. St. John**
**Administrative Law Judge**

23-016099
Page 10

## <u>PROOF OF SERVICE</u>

I certify that I served a copy of the foregoing document upon all parties and/or attorneys, to their last-known addresses in the manner specified below, this 29th day of June 2023.

*Verna Curtis*
_____
**Verna Curtis**
**Michigan Office of Administrative**
**Hearings and Rules**

### <u>Via Electronic Mail</u>



Mark S. Demorest
322 W. Lincoln Avenue
Royal Oak, MI 48067
**mark@demolaw.com**

Utica Community Schools
Sean Waymaster, Special Education Contact
11303 Greendale Drive
Sterling Heights, MI 48312
**sean.waymaster@uticak12.org**

Kevin T. Sutton
Miller Johnson
409 E. Jefferson, 5th Floor
Detroit, MI 48226
**suttonk@millerjohnson.com**

Bethanie Eggleston
MDE Office of Administrative Law
P.O. Box 30008
Lansing, MI 48909
**Egglestonb1@michigan.gov**

Precious Boone
MDE Office of Administrative Law
P.O. Box 30008
Lansing, MI 48909
**MDE-AdminLaw@michigan.gov**

# EXHIBIT 11

**STATE OF MICHIGAN**
**MICHIGAN OFFICE OF ADMINISTRATIVE HEARINGS AND RULES**

| | |
|---|---|
| IN THE MATTER OF: | Docket No.: 23-016099 |
| J.S. o/b/o C.S.,<br>　　　Petitioner | Case No.:　DP-23-0040 |
| | Agency:　　Education |
| v | Case Type: ED Sp Ed Regular |
| Utica Community Schools,<br>　　　Respondent | Filing Type: Appeal |

_____/

**Issued and entered**
**this 8ᵗʰ day of August 2023**
**by: Michael J. St. John**
**Administrative Law Judge**

**DECISION AND ORDER DENYING**
**PETITIONER'S MOTION FOR RECONSIDERATION**

**PROCEDURAL HISTORY**

The prior procedural history of this matter is detailed in the June 29, 2023 Decision and Order Granting Respondent's Motion for Summary Disposition.   On July 13, 2023, Petitioner filed their Motion for Reconsideration.

**ISSUE**

Should the prior dismissal be reconsidered and/or reversed?

**APPLICABLE LAW**

Rule 792.10135 governs motions for reconsideration in administrative hearings:

  (1)  If the decision or order of an administrative law judge is final, a party may file a request for reconsideration and the administrative law judge may grant the request for reconsideration upon a showing of material error.

  (2)  A request for reconsideration shall state with specificity the material error claimed. A request for reconsideration which presents the same issues previously ruled on, either expressly or by reasonable implication, shall not be granted.

23-016099
Page 2

> (3)  A request for reconsideration shall be filed within 14 days after the issuance of a decision or order, or such other time fixed by statute or rule governing specific proceedings.

## CONCLUSIONS OF LAW

### Summary disposition was not granted because an improper Petitioner filed the Complaint.

Petitioner first asserts/"clarifies" that the Student, who is an adult, is a party to the case. This was not the basis for granting Respondent's Summary Disposition Motion.  As noted in the Decision and Order, the proper remedy for any such procedural deficiency, if it existed, would be requiring an amended complaint rather than dismissal.

> Regardless of whether the Student signed the Complaint or an Amended Complaint, the most appropriate remedy if such a procedural deficiency existed would not be dismissal but rather to have the Petitioner file an amended complaint that meets all the procedural requirements.  Because, as noted below, the statute of limitations has passed for this case requiring dismissal, it is unnecessary to determine whether an amended due process complaint is required in this case.

Because the Petitioner's Complaint was not dismissed because it was filed by the Student's parent rather than the Student, there is nothing to reconsider on this issue.

### Respondent did not withhold material information from or make a material misrepresentation to the Student or the Student's parents.

Petitioner next argues that Respondent's statements to Petitioner that tutoring was unnecessary were misrepresentations and constitute the Respondent withholding information from the Petitioner.  Providing an opinion is not withholding information. Withholding information, by its very definition, is the failure to provide information that is required.  Providing an opinion is not a failure to provide required information.

Further, providing an opinion, even one that ultimately turns out to be incorrect, is not necessarily a material misrepresentation.  To be a material misrepresentation, the statement must be both false (a misrepresentation) and relied upon by the other party (material).  While there is a question of fact about whether the Student needed tutoring, there is no allegation or evidence that the Petitioner relied upon the Respondent's opinion that tutoring was unnecessary.  Quite the contrary, there is considerable evidence that the Petitioner disagreed with Respondent's opinion and actively sought to convince the Respondent of the error of their ways.

**23-016099**
**Page 3**

A school district not having trained staff to deal with dyslexia issues does not constitute a misrepresentation or withholding of information.

Losing the Student's elementary school records is also not a withholding of information. Respondent cannot produce materials that they do not have. Further, even if this were withholding information, the Petitioner clearly did not need this information to pursue their claim as noted in the Petitioner's own brief on page 4:

> UCS also withheld information. They claim they "lost" all of <Student's> elementary school records, and these were not provided. <Student's> parents had his third, fourth and fifth grade MEAP test results which showed he was not proficient, or only partially proficient, in different subjects.

Petitioner admits that Petitioner knew that the Student was not performing proficiently despite the Respondent's failure to provide all requested information. No exception to the two-year statute of limitations for the issues articulated at the prehearing conference for adjudication at a due process hearing were affected by the Respondent's failure to provide the Student's elementary school records.

Not receiving procedural safeguards could possibly be a withholding of information but in this case, Petitioner was clearly and fully aware of their rights and so Respondent did not withhold material information from the Petitioner. Petitioner cannot credibly claim that they were unaware of their right to file a due process complaint when they alleged violations of IDEA and failure to provide FAPE in their December 3, 2020, state complaint.

<u>The date that Petitioner knew or should have known about the Respondent's refusal to pay for the IEE was, at the latest, December 3, 2020: more than two years before the Petitioner filed their due process complaint.</u>

Petitioner re-alleges that each refusal by the Respondent to reimburse the Petitioner for the IEE constitutes a separate claim of action and restarts the two-year statute of limitations. This argument was addressed and dismissed in the Decision and Order:

> A claim accrues for purposes of the statute of limitations when a petitioner learns of the injury that is a basis for the action. *M.D. v. Southington Board of Ed.* (2d Cir. 2003). Here that is when the Petitioner knew or should have known that the Respondent school district was not going to pay/reimburse for the IEE.
>
> However, Petitioner next argues that each denial by the Respondent constitutes a separate accrual date for their claim up through a July 2021 attorney letter indicating a denial of a mediation request. While Petitioner(s)

23-016099
Page 4

may have been hopeful that they would receive payment for the IEE for more than a year after the IEE was performed, the claim accrued when the Respondent first refused to pay for the IEE.  Subsequent denials did not serve to extend the date that the Petitioner knew or should have known about their claim of action.

…

Each Respondent notification and affirmation of their prior decision not to reimburse for the IEE did not constitute a new violation.

## Conclusion

The Administrative Law Judge finds no material error as required to grant a motion for reconsideration under Rule 792.10135.  The issues raised by Petitioner in their motion do not indicate any material error and essentially re-state the arguments made in their response to Respondent's Motion for Summary Disposition.

## ORDER

**NOW THEREFORE IT IS ORDERED** that Petitioner's Motion for Reconsideration is **DENIED.**

**IT IS FURTHER ORDERED** that no further filing on this matter will be accepted except for a copy of any claim of appeal pursuant to Rule 792.10137.

**A party aggrieved by this decision may seek judicial review by filing an action in a court of competent jurisdiction within 90 days of the date of this order.**

**Michael J. St. John**
**Administrative Law Judge**

23-016099
Page 5

## PROOF OF SERVICE

I certify that I served a copy of the foregoing document upon all parties and/or attorneys, to their last-known addresses in the manner specified below, this 8th day of August 2023.

*Verna Curtis*

**Verna Curtis**
**Michigan Office of Administrative**
**Hearings and Rules**

### Via Electronic Mail



Mark S. Demorest
322 W. Lincoln Avenue
Royal Oak, MI 48067
**mark@demolaw.com**

Sean Waymaster, Special Education Contact
Utica Community Schools
11303 Greendale Drive
Sterling Heights, MI 48312
**sean.waymaster@uticak12.org**

Kevin T. Sutton
Miller Johnson
409 E. Jefferson, 5th Floor
Detroit, MI 48226
**suttonk@millerjohnson.com**

Bethanie Eggleston
MDE Office of Administrative Law
P.O. Box 30008
Lansing, MI 48909
**Egglestonb1@michigan.gov**

Precious Boone
MDE Office of Administrative Law
P.O. Box 30008
Lansing, MI 48909
**MDE-AdminLaw@michigan.gov**

# EXHIBIT 12

 Gmail

John Swiatek <johnaswiatek@gmail.com>

---

**Information**

---

JOHNSTON, TUMARA <TUMARA.JOHNSTON@uticak12.org>               Mon, Jan 20, 2020 at 12:26 PM
To: John Swiatek <johnaswiatek@gmail.com>

Good afternoon,

I have done some reading over the past weekend and have seen in IDEA where it does acknowledge Dyslexia, and I apologize for not knowing more about it.  I wanted to also share that you will here from either Jeanette or Ritu in order to set up a meeting to Review Existing Evaluation Data (REED).

Enjoy your day,

Tumara


Tumara Johnston

Supervisor of Special Services

tumara.johnston@uticak12.org

Phone: 586.797.1020

Fax: 586.797.8371